USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12 / 1 / 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALVADOR CORDERO,

                Plaintiff,

v.

DELTA AIR LINES, INC.,

                Defendant.

No. 16-CV-6803 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Salvador Cordero brings this action against Defendant Delta Air Lines, Inc. for personal injuries that he sustained while boarding a flight at Luis Muñoz Marín International Airport in Puerto Rico ("LMM"). Before the Court is Delta's motion to transfer the case to the District of Puerto Rico. For the reasons that follow, the motion is denied.

## BACKGROUND[1]

### I. The Parties

Cordero resides in New York City, where he was born and has lived for at least twenty-four years. Cordero Aff. ¶¶ 3–6. On July 19, 2014, he was a passenger on DL 348 from LMM to John F. Kennedy International Airport in New York City ("JFK"). *Id.* ¶ 16. Cordero and his family had been visiting Cordero's mother-in-law in Puerto Rico. *Id.* ¶ 12. They had planned to be in Puerto Rico for six weeks, but remained longer after Cordero's son had a severe reaction to medication, which required him to be hospitalized. *Id.* ¶ 13. Cordero does not own property or reside in Puerto Rico. *Id.* ¶ 28.

---

[1] The following facts are taken from the Complaint and the affidavits submitted by the parties in connection with this motion and are accepted as true for the purposes of deciding this motion. *See Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 23 n.1 (S.D.N.Y. 2016).

1

Delta is a Delaware corporation with its principal place of business in Georgia. Def. Mot. at 5. Aerostar is the operator/lessee of LMM, including the jet bridges used to board aircraft. *Id.* at 3. Airport Aviation Services ("AAS") provides wheelchair services for passengers at LMM who request assistance. *Id.* at 4. According to the Airport Services Agreement between AAS and Delta, AAS is required to defend, indemnify, and obtain insurance for Delta regarding any claims arising out of or resulting from any acts or omissions of AAS. *Id.* at 5. Aerostar and AAS are both incorporated under the laws of, and maintain their principal places of business in, Puerto Rico. *Id.*

## II. Events Giving Rise to Cordero's Claims

On the date of the flight, Cordero requested wheelchair assistance at LMM. Cordero Aff. ¶ 16. He was taken directly to the plane by wheelchair but was left to board the plane on his own. *Id.* ¶ 17. As he stepped onto the plane, his foot became caught in the space between the plane and the boarding gate. *Id.* ¶ 20. He fell forward, into the plane, and two flight attendants—Richard Dzubian[2] and Carlton Simmons—picked him up. *Id.* ¶¶ 20-22. The flight attendants did not realize that Cordero's foot was caught in the space and he "immediately felt pain in [his] body." *Id.* ¶ 21. Cordero's flight landed at JFK at 2:00 a.m. *Id.* ¶ 23. It was then that he first reported the incident, to a Delta supervisor. *Id.* ¶ 23. He did not make a report of the incident in Puerto Rico. *Id.*

The following day—July 20, 2014—Cordero went to the emergency room at St. Luke's Roosevelt Hospital in New York. *Id.* ¶ 24. Dr. Ashley Simela, Cordero's orthopedic spinal surgeon from Bronx Lebanon Hospital, performed a lumbar fusion and has treated him since the

---

[2] Mr. Cordero refers to this flight attendant as Rick Durban. *See* Cordero Aff. ¶¶ 20-22. A Delta manager, however, has attested that this flight attendant's name is in fact Richard Dzubian. *See* Def. Mot., Certification of Michael B. Riddle.

2

injury. *Id.* ¶ 25. Cordero has also consulted with a pain management doctor—Arik Hauskenecht—since the injury. *Id.* ¶ 26. Dr. Hauskenecht's office is located in Manhattan. *Id.*

Cordero intends to call as witnesses the two flight attendants who tried to help him after he fell. *Id.* ¶ 30. Mr. Dzubian resides in New York and the other, Mr. Simmons, lives in Florida. Pl. Opp. at 5; Def. Mot., Certification of Michael B. Riddle.[3] Cordero also intends to call the following New York residents as witnesses: his wife, four children, a former employer, and Drs. Simela and Hauskenecht. Cordero Aff. ¶¶ 31-32. Cordero subsists on public assistance and lives in government subsidized housing. *Id.* ¶ 33. He asserts that he cannot afford to travel between Puerto Rico and New York in order to litigate the case or to pay for the travel expenses of witnesses. *Id.*

## III. Procedural History

On July 15, 2016, Cordero filed his Complaint against Delta and Aerostar in New York Supreme Court. Def. Mot. at 5. Delta then removed the action to this Court, Dkt. 1, and filed its answer, Dkt. 6, and motion to transfer the matter to the District of Puerto Rico, Dkt. 24, while Aerostar moved for dismissal due to a lack of personal jurisdiction, Dkt 10. On June 27, 2017, the Court denied as moot Delta's motion to transfer and granted leave for Cordero to file an Amended Complaint, Dkt. 33, which he did, but without naming Aerostar as a defendant, Dkt. 34. Delta then filed the instant renewed motion for transfer to the District of Puerto Rico. Dkt. 39.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to

---

[3] In his affidavit, Cordero states that Mr. Simmons resides in New Jersey. Cordero Aff. ¶ 30. This statement, however, is contradicted by both parties' submissions, including the certification of a Delta manager. *See* Pl. Opp. at 5; Def. Mot., Certification of Michael B. Riddle.

3

any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party requesting transfer bears the burden of establishing by clear and convincing evidence that transfer is warranted. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Nevertheless, "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

In deciding a motion to transfer venue, the inquiry is two-fold. "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016). Second, "the court must . . . determine whether transfer is appropriate." *Id.* In determining whether transfer is appropriate, courts consider several factors, including:

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, No. 16-CV-4210 (NRB), 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017).

This action surely could have been brought in the District of Puerto Rico: venue would have been proper, *see* 18 U.S.C. § 1391(b)(2), and the court could have asserted personal jurisdiction over the defendants. The only question, therefore, is whether transfer is appropriate.

The Court finds that it is not. Although the locus of the operative facts is Puerto Rico and transfer would allow Delta to litigate its claims against Aerostar and AAS simultaneously, on the

4

whole the relevant factors weigh in favor of this action remaining in the Southern District. In particular, the following considerations support the Court's conclusion: (1) Cordero has chosen his jurisdiction of domicile as the forum in which to litigate; (2) the witnesses who are likely to provide the most probative testimony would be inconvenienced by transfer and are largely outside the territorial scope of the District of Puerto Rico's compulsory process; and (3) the vast disparity in resources between Cordero, who would be inconvenienced by transfer, and Delta.

## I. The Factors That Weigh Against Transfer

As an initial matter, a plaintiff's "choice of forum is entitled to "considerable weight and is generally not disturbed unless the balance strongly favors the motion to transfer," *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 22 (S.D.N.Y. 2012), particularly where the chosen district is the plaintiff's home forum, *see Tomjai Enters., Corp. v. Laboratorie Pharmaplus USA, Inc.*, No. 12-CV-3792 (RWS), 2012 WL 3104891, at *5. Cordero is a longtime resident of New York City, in the Southern District. The Court accordingly affords his choice of forum substantial deference.

The convenience of the witnesses also militates against transfer. This factor "is an important consideration, and has often been described as the single most important § 1404(a) factor." *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, __ F. Supp. 3d __, 2017 WL 2062980, at *6 (S.D.N.Y. 2017). When considering the convenience of witnesses, courts look at "the materiality, nature, and quality of each witness, in addition to the number of witnesses in each District," *Guccione v. Harrah's Marketing Services Corp.*, No. 06-CV-4361, 2009 WL 2337995, at *7 (S.D.N.Y. July 29, 2009), and generally accord greater weight to the convenience of non-parties, *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009).

Here, the convenience of the witnesses—particularly those likely to offer the most probative testimony—weighs in favor of this case remaining in the Southern District. In a personal

5

injury case, the primary witness is often the plaintiff. Cordero would be substantially inconvenienced by having to travel to Puerto Rico to testify. More significantly, the two flight attendants who "picked [Cordero] up not realizing [his] foot was caught," Pl. Opp. at 6, and presumably witnessed events surrounding his fall are residents of New York and Florida, similarly weighing against a transfer to Puerto Rico. And the third flight attendant—who did not assist Cordero—resides in New Jersey. Finally, although less significant given that their testimony will go primarily to damages, both doctors who have treated Cordero for his injuries are located in New York, as are Cordero's family members and associates who may also be called upon to testify as to the lasting effects of the injury.[4]

The only witnesses for whom transfer would be more convenient are Delta employees who reside in Puerto Rico: (1) two Delta gate agents, (2) the Delta Operations Service Manager; and (3) the Delta Station Manager. It is unclear, however, if those employees would be able to testify to facts specific to the incident or rather have knowledge only of the general nature of the equipment in use at LMM. Testimony regarding the latter subject may not be especially probative and accordingly mitigates the degree to which these employees' presence in Puerto Rico favors transfer.[5]

The availability of process to compel the attendance of unwilling witnesses also disfavors transfer. As noted earlier, the witnesses with the most probative testimony—other than Cordero—

---

[4] Delta notes that Cordero has previously been a patient of physicians in Puerto Rico. *See* Def. Mot. at 15. That treatment, however, occurred *before* the incident that gave rise to this suit. *See* Def. Mot., Ex. C. at 2. While records in the possession of these physicians may be relevant in assessing any medical conditions Cordero may have had prior to the incident giving rise to this suit, the far more probative evidence is that relating to Cordero's condition after the incident. Moreover, the *testimony* of any physicians who only treated Cordero prior to the incident is likely unnecessary.

[5] Delta also asserts that Aerostar witnesses who could testify regarding the ownership, maintenance, and condition of the jet bridge "presumably reside in Puerto Rico." Def. Mot. at 14. Not only is this statement speculative, the testimony of these witnesses may also not be especially probative.

6

are the flight attendants, who are residents of New York, New Jersey, and Florida. Although, as Delta employees, they may choose to travel to Puerto Rico on behalf of their employer, they may not be compelled to testify on the basis of their employment with Delta because they are not officers of the corporation.[6] *See, e.g., Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *10 (March 27, 2015). The District of Puerto Rico thus cannot compel their attendance, while at the very least the flight attendant who resides in New York and virtually all of the damages witnesses can be compelled to testify in the Southern District of New York.[7] *See* Fed. R. Civ. P. 45(c)(1)(B). Although those witnesses who are friendly to Cordero may choose to testify voluntarily, the flight attendants may need to be compelled. This factor thus weighs against transfer.

The convenience of the parties similarly weighs against transfer. With respect to this aspect of the analysis, a defendant "must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *SBAV LP v. Porter Bancorp, Inc.*, No. 13-CV-372 (PAE), 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013). Delta has provided an arguable basis for finding that it will be inconvenienced if this matter were to remain in the Southern District, but has failed to show that Cordero would not be substantially inconvenienced by transfer.

Delta is an international corporation that maintains its principal place of business in Georgia but also conducts business in New York City. Under typical circumstances, it presumably would be more convenient for Delta to defend itself in this District than in Puerto Rico. Here,

---

[6] It is possible, moreover, that one or more of the flight attendants will no longer be employed by Delta at the time of trial.

[7] It is also possible that courts in the Southern District of New York can compel the third flight attendant, who resides in New Jersey, to testify because a non-party witness is subject to the compulsory process of a federal district court if he resides within 100 miles of the court. *See* Fed. R. Civ. P. 45(c)(1)(A). Neither party, however, has provided the Court with his address.

7

however, Delta may assert defenses predicated upon the potential liability of Aerostar and AAS. Aerostar owned and maintained the jet bridge upon which Cordero fell as he attempted to board the aircraft. And an AAS employee is the one who brought Cordero to the jet bridge in a wheelchair before leaving him there. AAS is contractually required to defend, indemnify, and obtain insurance for any claim arising out of its contractual obligations with Delta. It appears, however, that the Southern District cannot exercise jurisdiction over either Aerostar or AAS, and that Delta would thus have to bring a separate contribution or indemnity action in Puerto Rico. If the case is transferred to Puerto Rico, by contrast, Delta would be able to defend against Plaintiff's claims as well as assert all common law and contractual contribution and indemnity claims against both Aerostar and AAS in one consolidated action.

The Court is sensitive to the fact that the ability to implead a third-party defendant in a transferee court favors transfer. *See, e.g., Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y 2004). This consideration, however, does not outweigh the substantial inconvenience to Cordero if the action is transferred, particularly given the ease with which Delta can otherwise defend itself in New York City. Cordero is a long-term resident of the Southern District who has chosen to litigate in his home forum; it would be a substantial inconvenience for him to travel to Puerto Rico in order to litigate this case merely because he was injured while returning from a family vacation.

The Court's conclusion with respect to the inconvenience of the parties is buttressed by their relative means. Delta is an international corporation. Cordero, however, subsists on public assistance and lives in government subsidized housing. While he has traveled to Puerto Rico in the past, it would be an onerous burden for him to bear the costs of litigating this action so far from his jurisdiction of domicile. Where "the defendant[] [is a] corporation[] purportedly conducting

8

interstate business, while plaintiff alleges severe financial constraints and the lack of funds necessary to travel to and from the proposed forum to prosecute the action . . . this factor weighs against transfer." *Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231, 234 (E.D.N.Y 1994).

Accordingly, the Court finds that these factors, taken together, weigh substantially in favor of this action remaining in the Southern District.

## II. The Neutral Factors

The following factors do not materially favor or disfavor transfer: (1) the location of relevant documents and ease of access to proof and (2) the forum's familiarity with the governing law. This is not a document-intensive case; presumably, any relevant documents can readily be accessed electronically from either district. Moreover, while Puerto Rican law will govern the dispute, this action does not implicate the sort of nuanced or complex foreign law which courts in this District may find difficult to apply. *See Everlast World's Boxing Headquarters Corp. v. Ringsite, Inc.*, 928 F. Supp. 2d 735, 747 (S.D.N.Y. 2013). Neither of these factors, therefore, bears substantially on the Court's analysis.

## III. The Factors That Favor Transfer

The Court is cognizant that the locus of the operative facts counsels in favor of transfer. This consideration "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'" *SBAV LP*, 2013 WL 3467030, at *4. "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96-CV-8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (citation omitted). Here, the locus of the operative facts is Puerto Rico. Although Cordero received medical treatment in this District,

9

the "acts or omissions for which Defendants could be held liable occurred" in Puerto Rico. *See Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010).

In considering trial efficiency and the interests of justice, moreover, Delta's desire to implead Aerostar and AAS weighs in favor of transfer. The ability to implead a third party is a significant consideration. *See, e.g., Posven*, 303 F. Supp. 2d at 406. In light of other considerations discussed above, however, it is not clear to the Court that the efficiency gains from Delta impleading the other two entities make this factor, on the whole, materially favor transfer. Indeed, the "interests of justice based on the totally of circumstances" militates against requiring an individual—particularly one residing in government subsidized housing—to litigate an action against an international corporation far from his district of domicile. And, as Delta notes, it would only take approximately three months longer for this case to proceed to trial in the Southern District. While admittedly a close question, at most this factor marginally favors transfer.

The locus of the operative facts and efficiency considerations, therefore, are not dispositive in light of the degree to which the other factors disfavor transfer. Accordingly, considering all the relevant factors, this Court is convinced that this action should remain in the Southern District.

## CONCLUSION

For the foregoing reasons, Delta's motion for transfer is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry thirty-nine. No later than December 8, 2017, the parties shall submit a case management plan, a template of which may be found at http://nysd.uscourts.gov/judge/Abrams.

Dated: December 1, 2017
New York, New York

Ronnie Abrams
United States District Judge